**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vito GIACALONE (87–1924), Mario Agosta (87–1931), Albert Hady (87–1932), Jack V. Giacalone (87–1933), Anthony D. Giacalone (87–1934), Defendants–Appellants.**

**Nos. 87–1924, 87–1931 to 87–1934.**

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1988.

Decided Aug. 5, 1988.

N.C. DeDay LaRene, Detroit, Mich., G. Robert Blakey (argued), Notre Dame University Law School, Notre Dame, Ind., for Vito Giacalone.

Robert M. Kalec, Asst. U.S. Atty., David McKeon, Sp. Atty., Detroit Strike Force, Detroit, Mich., Joseph C. Wyderko (argued), Dept. of Justice–Criminal Div., Washington, D.C., for U.S.

William E. Palazzolo, Bufalino & Palazzolo, P.C., St. Clair Shores, Mich., G. Robert Blakey (argued), Notre Dame University Law School, Notre Dame, Ind., for Mario Agosta.

Mark J. Kriger, Detroit, Mich., G. Robert Blakey (argued), Notre Dame University Law School, Notre Dame, Ind., for Albert Hady.

Neil H. Fink, Detroit, Mich., G. Robert Blakey (argued), Notre Dame University Law School, Notre Dame, Ind., for Jack Giacalone.

David F. DuMouchel, Cynthia J.H. Oberg, Detroit, Mich., G. Robert Blakey (argued), Notre Dame University Law School, Notre Dame, Ind., for Anthony Giacalone.

Before MILBURN, GUY and NORRIS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Defendants, Vito Giacalone, Jack Giacalone, Albert Hady, and Mario Agosta, appeal their convictions for conspiring to participate in the affairs of a criminal enterprise formed for the purpose of collecting illegal gambling debts, in violation of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d). Defendant Anthony Giacalone appeals his conviction for conducting an illegal gambling business, in violation of 18 U.S.C. § 1955. Each of the defendants received prison sentences ranging from one to five years. The defendants initially entered pleas of "not guilty." However, after the district court denied two of their pretrial motions, the defendants entered conditional guilty pleas pursuant to Fed.R.Crim.P. 11 (a)(2), thereby reserving a right to appeal from the convictions and the pretrial rulings.

All of the issues raised on appeal relate to the government's collection and use of information obtained by means of electronic surveillance. Specifically, defendants contend that the district court erred by refusing to conduct an *in camera* hearing in order to examine the informants whose

allegations were used to support the application for a wiretap.

Defendants also allege on appeal, as they did below, that the warrants authorizing the wiretaps violated four specific statutory requirements set forth in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 (Title III): (1) inadequate showing of probable cause; (2) insufficient showing of the unfeasibility of alternative investigatory techniques; (3) lack of particularity; and (4) failure to minimize the extent of the scope of the electronic surveillance.

For the following reasons, the defendants' convictions are affirmed.

### I.

On July 28, 1982, the government submitted an application to Judge Anna Diggs–Taylor, United States District Judge for the Eastern District of Michigan, for an order authorizing a wiretap pursuant to Title III. The application sought authorization for the interception of oral and wire communications made at the business premises of Farm Fresh Produce, Inc., a wholesale produce company in Detroit, Michigan. In the application, the government alleged that several named individuals were involved in an extortionate scheme to interfere with commerce by using threats of violence to compel customers to purchase produce from Farm Fresh, in violation of 18 U.S.C. §§ 1951 and 1952. In support of its application, the government submitted a forty-two page affidavit from Special Agent Brian K. Rossi of the Federal Bureau of Investigation. The information contained in Agent Rossi's affidavit was obtained primarily from confidential informants who claimed to have personally observed the alleged acts of intimidation, or to have overheard conversations relating to the extortionate activities. Agent Rossi stated in the affidavit that the informants were unwilling to testify even if they were granted immunity and placed in protective custody. According to Agent Rossi, alternative investigative procedures—such as physical surveillance, infiltration of the Farm Fresh business organization, or ob-

taining a search warrant—were considered and rejected as unlikely to succeed or too dangerous. Moreover, Rossi stated that interviews with the extortion victims would "alert the suspects to the pending investigation and would thereby cause them to alter their modus operandi thereby frustrating the investigation."

On July 28, 1982, Judge Taylor issued an order authorizing the government to intercept oral communications at the premises of Farm Fresh Produce and the surrounding area. Judge Taylor also issued a Title III order authorizing electronic surveillance of four telephones located on the premises.

During the course of the first thirty-day period of authorized surveillance, the government was unable to obtain any information relating to the alleged extortionate scheme. The government did, however, uncover evidence of other federal crimes, including gambling. Judge Taylor was kept informed of these developments through progress reports and, based on the evidence obtained during the first thirty-day period, Judge Taylor granted the government's application for a thirty-day extension of the Title III order. Additional extensions were granted until the surveillance terminated on December 3, 1982.

On June 5, 1986, a grand jury returned a three-count indictment against the defendants. Count I of the indictment charged defendants with conspiracy to engage in a racketeering enterprise in violation of RICO, 18 U.S.C. § 1962(d). Count II charged defendants with conducting an illegal gambling business in violation of 18 U.S.C. § 1955, and of aiding and abetting each other in violation of 18 U.S.C. § 2(a). Finally, in Count III, defendants were charged with conspiracy under 18 U.S.C. § 371. The defendants pled not guilty.

On January 6, 1987, the defendants filed two motions to suppress evidence. In the first motion, defendants alleged that some of the allegations contained in the original Title III application were false. In support of their challenge to the factual accuracy of the application, the defendants submitted affidavits of their own and from some of the alleged extortion victims deny-

ing the alleged incidents of threats and intimidation. The motion concluded with the following request for relief:

Wherefore, defendants respectfully pray that this Honorable Court enter an order for an in-camera examination of the informants, for an evidentiary hearing, and upon conclusion of said evidentiary hearing, an order suppressing from evidence all Title III interceptions.

A second motion entitled "Motion to Suppress Fruits of Electronic Surveillance" was also filed on January 6, 1987. In the second motion, defendants challenged not only the original authorization order of July 28, 1982, but also the subsequent extensions granted by Judge Taylor on August 30, 1982, October 1, 1982, and November 5, 1982. The motion set forth four alleged violations of the statutory requirements of Title III. The second motion also contained a request for an evidentiary hearing on the minimization issue.

On May 15, 1987, the trial judge, Judge Suhrheinrich, conducted an *in camera* examination of the affiant, Special Agent Brian K. Rossi of the Federal Bureau of Investigation. Judge Suhrheinrich also interviewed four other FBI agents who had worked with the informants involved in the case. The judge did not examine the informants themselves. Assistant United States Attorney Walter Kozar was also present and assisted in the examinations. None of the defense attorneys were allowed to participate in the hearing.

Following the *in camera* examination of the FBI agents, Judge Suhrheinrich issued an order denying defendants' motion for an *in camera* examination of the informants and for an adversarial evidentiary hearing on the issue of the affiant's veracity. In the memorandum opinion and order dated May 27, 1987, Judge Suhrheinrich stated:

After a thorough and careful examination of Agent Rossi and his affidavit, the Court finds no evidence to suggest Agent Rossi included a false statement in the government's affidavit. Furthermore, there is no reason to believe Agent Rossi acted in reckless disregard for the truth. The Court has no doubt as to Agent Rossi's veracity or the truthfulness of the allegations contained in his affidavit.

Accordingly, the court concluded that defendants were not entitled to an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because they had failed to make a "substantial preliminary showing" that Agent Rossi had made a false statement in his affidavit, either knowingly or with reckless disregard for the truth.

On June 2, 1987, Judge Suhrheinrich issued an opinion and order denying defendants' motion to suppress the fruits of the electronic surveillance. Judge Suhrheinrich rejected defendants' arguments relating to particularity, necessity, and probable cause. The court, however, allowed the defendants an opportunity to present additional evidence regarding the issue of minimization. On June 10, 1987, Judge Suhrheinrich issued an order finding that the government had properly restricted the scope of its surveillance to the interceptions authorized under the warrants and permissible "spot checks." Consequently, defendants' suppression motion was denied and, later that same day, on June 10, 1987, defendants entered conditional guilty pleas pursuant to Fed.R.Crim. P. 11(a)(2). This appeal followed.

## II.

### A.

The first issue raised on appeal by defendants concerns the district court's denial of their motion for an *in camera* examination of the informants whose allegations supplied the probable cause for issuing the Title III order of July 28, 1982. The defendants' original motion also contained a request for an adversarial evidentiary hearing to determine the veracity of the government affiant, Agent Rossi. Attached to their motion were several affidavits from defendants and others contradicting allegations which appeared in Agent Rossi's affidavit. Defendants claimed that their affidavits showed that either the informants lied to Special Agent Rossi or that he lied

in his affidavit. In their motion before the district court, defendants admitted that "it is impossible for Defendants to make the 'substantial preliminary showing' that the affiant or his fellow agents, as opposed to the informants, provided the false statements in order to merit an evidentiary hearing" under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

On appeal, defendants apparently concede, as they did in their pretrial motion, that they are not entitled to a "fullblown" *Franks* hearing until they make a "substantial preliminary showing" that the government affiant (in this case Agent Rossi) lied in his affidavit, as opposed to showing that the informants lied to Agent Rossi. Nevertheless, defendants contend that it was a "manifest abuse of discretion" for the district court not to examine the *informants* as well as Agent Rossi in order to determine who was telling the truth. We disagree.

In *Franks v. Delaware*, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155–56, 98 S.Ct. at 2676–77. In *Franks*, the defendant challenged his rape conviction on fourth amendment grounds arguing that the police had deliberately lied in the affidavit used to procure a warrant to search his apartment. In the affidavit, the police officers stated that they had contacted the defendant's employers who had told the officers that defendant's normal attire matched the description given by the rape victim. The search of the apartment revealed similar articles of clothing and a knife similar to the one used in the assault. Subsequently, the defendant's attorney requested an evidentiary hearing to allow the defendant's employers to testify that neither one of them had spoken to the police officers who had signed the affidavit and that their stories were "somewhat different" from the information recited in the affidavit. The trial court refused to grant a hearing and the defendant's conviction was affirmed by the Supreme Court of Delaware.

The United States Supreme Court granted certiorari to determine whether a criminal defendant ever has the right to challenge the truthfulness of factual statements made in an affidavit supporting a warrant. The Court noted several legitimate arguments both in favor and against requiring an evidentiary hearing to test the veracity of a warrant application. After weighing the competing interests, the Court concluded that an evidentiary hearing is constitutionally required where the defendant makes "allegations of deliberate falsehood or of reckless disregard for the truth" and the allegations are substantiated by an offer of proof. 438 U.S. at 171, 98 S.Ct. at 2684. The Court emphasized that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id.*

■ In the instant case, the affidavits submitted by the defendants themselves and by some of the alleged victims contradict allegations made by the FBI informants which were repeated by Agent Rossi in the warrant affidavit. Unlike *Franks*, the *informants* in this case do not dispute the allegations made in the affidavit based on their statements to the FBI. It is not enough for defendants to show that the affidavit contains false information; in order to obtain a *Franks* hearing, defendants

must make a "substantial preliminary showing" that the false statements originated with the government affiant, not with the informants, or that the government affiant repeated the stories of the affiant with reckless indifference to the truth. In this case, it is clear that the defendants are not entitled to a *Franks* hearing based on the affidavits submitted by them since those statements do not necessarily call into question the veracity of the *affiant*. Given the absence of any showing that Rossi made false statements in the affidavit, the district court properly concluded that a *Franks* evidentiary hearing was not warranted. *See United States v. Bloomgren*, 814 F.2d 580, 583–84 (10th Cir.1987); *United States v. Barrientos*, 758 F.2d 1152, 1159 (7th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986); *United States v. Southard*, 700 F.2d 1, 10 (1st Cir.), *cert. denied sub nom. Ferris v. United States*, 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

Defendants apparently concede this point. Nevertheless, they argue that they are faced with what they describe as a "Catch 22" situation, i.e., they have evidence that either the informants or Agent Rossi lied, but they cannot prove it was Agent Rossi without first interviewing the informants, or at least having the district court interview the informants *in camera*. Therefore, defendants contend that the court was obligated to interview *both* Rossi *and* the informants *in camera* and that it was a "clear abuse of discretion" to only examine Agent Rossi.

▉ We hold that the district court did not abuse its discretion by choosing to examine only the affiant and the other FBI agents *in camera* and not the informants. We decline defendants' invitation to extend the reasoning of the *Franks* decision to mandate a preliminary *in camera* examination of both the affiant and the informants in cases where the defendants allege that the affidavit contains false information. In *Franks*, the Court was primarily concerned with the credibility of the *affiant*, not the informants. The *Franks* Court observed that the fourth amendment does *not* re-

quire "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information within the affiant's own knowledge that sometimes may be garnered hastily." 438 U.S. at 165, 98 S.Ct. at 2681. Rather, the *Franks* Court simply held that the government affiant must reasonably believe the allegations to be true. *Id.* Thus, in *Franks*, the Court distinguished its previous opinion in *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). In *Rugendorf*, the Court held that:

> [N]o Fourth Amendment question was presented when the claimed misstatements in the search warrant affidavit "were of only peripheral relevancy to the showing of probable cause, *and*, not being within the personal knowledge of the affiant, did not go to the integrity of the affidavit." 376 U.S., at 532 84 S.Ct. at 828 (emphasis added). *Rugendorf* emphasized that the "erroneous statements ... were not those of the affiant" and thus "fail[ed] to show that the affiant was in bad faith or that he made any misrepresentations to the Commissioner in securing the warrant." *Id.*, at 533, 84 S.Ct. at 828.

*Franks*, 438 U.S. at 163, 98 S.Ct. at 2680 (citing *Rugendorf*, 376 U.S. at 532–33, 84 S.Ct. at 828).

▉ In the instant case, Judge Suhrheinrich took it upon himself to examine Agent Rossi *in camera*. In describing the examination, Judge Suhrheinrich stated:

> During the examination, the Court questioned Agent Rossi about the facts supporting the allegations contained in the affidavit. The Court inquired into how and from whom Agent Rossi obtained the information in the affidavit. Agent Rossi was questioned on the veracity of the informants who provided the government with information which was included in the affidavit. The Court reviewed the conditions under which the informant based information was given to Agent Rossi and the precautions taken to assure the information was reliable. Additionally, the Court examined Agent

Rossi's background and extent of involvement in the case.

Based on this examination, Judge Suhrheinrich concluded that Agent Rossi did not intentionally lie or act in reckless disregard of the truth.

The transcript of the *in camera* examination conducted by Judge Suhrheinrich has been placed under seal and thus was unavailable to the defendants. Based on our review of that transcript, we are satisfied with the scope and the manner of the examination. The transcript reveals that Judge Suhrheinrich questioned Agent Rossi very closely regarding the allegations made in the application for the Title III authorization. The judge asked Agent Rossi specific questions regarding the reliability of the informants and the sources of their knowledge. Moreover, the judge also examined four other FBI agents regarding the accuracy and reliability of information obtained by other informants. Agent Rossi informed the judge that he had reviewed his affidavit with the other agents prior to its submission in order to ensure the accuracy of the allegations. We find that the extensive examination conducted by Judge Suhrheinrich was more than adequate to establish the veracity of the affiant, Agent Rossi.

On appeal, defendants do not suggest that Judge Suhrheinrich's factual finding with regard to Agent Rossi's credibility is clearly erroneous. Instead, defendants contend that the district judge could not adequately assess Agent Rossi's veracity without also interviewing the informants. We find nothing in *Franks* which suggests that *in camera* examinations of both informants and affiants are Constitutionally required in order to help establish the "substantial preliminary showing" necessary to invoke a *Franks* evidentiary hearing.

Defendants quote from a passage in *Franks* wherein the Court states:

And because we are faced today with only the question of the integrity of the affiant's representations as to his own activities, we need not decide, and we in no way predetermine, the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made. 438 U.S. at 170, 98 S.Ct. at 2684. We note that the Court is referring to a situation which exists *after* a substantial preliminary showing has been made. The Court explained that "[t]he requirement of a substantial preliminary showing" is intended "to prevent the misuse of a veracity hearing for the purposes of discovery and obstruction." *Id.* In the instant case, the affidavits submitted by defendants do not amount to a "substantiated preliminary showing" that Agent Rossi's statements were false; therefore, there is no need to consider whether the informants' identities should be revealed to defendants for purposes of a *Franks* evidentiary hearing.

In sum, we find that the district court did not abuse its discretion by declining to examine the informants *in camera* in addition to the government's affiant. Under *Franks*, suppression is required only when the *affiant* deliberately lied or testified in reckless disregard of the truth. The procedure followed by the district court in this case struck a fair balance between defendants' interests in excluding evidence secured by means of a false affidavit and the government's interest in preserving the confidentiality of its informants. Similar procedures have been approved by other federal courts. *See, e.g., United States v. Kiser,* 716 F.2d 1268, 1270–74 (9th Cir. 1983); *United States v. Southard,* 700 F.2d 1, 10–11 (1st Cir.1983); *United States v. Arrington,* 618 F.2d 1119, 1125–26 (5th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981). *Cf. United States v. Bloomgren,* 814 F.2d 580, 582–84 (10th Cir.1987); *United States v. Barone,* 787 F.2d 811, 814 (2d Cir.1986). *See also United States v. Missouri,* 644 F.Supp. 108, 112–13 (E.D.Mich.1986).

▇ Accordingly, we find that the district court did not err in denying defendants' motion for an *in camera* examination of the confidential informants.[1]

1. Our holding is not meant to imply that the type of *in camera* examination of the affiant

### B.

We now consider defendants' claims of error as they relate to the statutory requirements of Title III.

### 1. Probable Cause

■ In the instant case, defendants argue that the facts alleged in the warrant application and the accompanying affidavit were not sufficient to establish probable cause to believe that the defendants would use the telephone system to further their alleged extortionate scheme or that the extortionate activities would occur at the site of defendants' business.

Prior to authorizing the use of electronic surveillance under Title III, the issuing judge must determine whether the facts alleged in the application create probable cause to believe that: (1) an individual has committed, is committing, or is about to commit the offense charged; (2) communications concerning the offense will be obtained through the requested surveillance; and (3) the location of the electronic surveillance has been used, is being used, or will be used in the commission of the offense, or is leased to, listed in the name of, or commonly used by the individual suspected of the offense. *See* 18 U.S.C. § 2518(3)(a), (b), and (d).[2]

In *United States v. Alfano*, 838 F.2d 158 (6th Cir.1988), this court recently set forth the general standard used for determining the existence of probable cause under Title III:

> [T]here is no specific formula that must be met for a warrant, and ... evidence must be judged on the totality of the circumstances and in a reasonable and common sense manner. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Under this standard, the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered.
>
> Obviously, certainty is not required at this stage, and the exact quantum of support required has frequently been described as "a fair probability," but more than a "mere suspicion," that such evidence will be discovered. Facts can amount to a fair probability without being proof beyond a reasonable doubt or even a *prima facie* showing. Id. at 235, 103 S.Ct. at 2330.

838 F.2d at 161–62.

The *Alfano* court also described the appropriate standard of review of Title III authorizations:

> Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may

conducted by Judge Suhrheinrich is Constitutionally required. We do not attempt to describe the exact parameters which would govern such a hearing. Nor do we decide the issue of whether such a procedure is even necessary. Rather, we merely hold that the defendants' fourth amendment rights were not violated by the court's refusal to interview the informants *in camera* along with the affiant. We believe that the trial judge should retain the discretion to determine what type of hearing is necessary, if any, to determine the veracity of the affiant in cases where the defendant has alleged that the affidavit contains false information, but has failed to make a "substantial preliminary showing" that the *affiant* has lied such as that which would require a *Franks* hearing.

**2.** Title 18 U.S.C. § 2518(3) provides in part:

Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the

territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

....

(d) except as provided in subsection (11), there is probable case for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

appear at the time, "great deference" is normally paid to the determination of an issuing judge. "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405 [3416], 82 L.Ed.2d 677 (1984) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)). Thus, the fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant. In *United States v. Lambert,* 771 F.2d 83, 93 (6th Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985), we held that a magistrate's determination on the question of probable cause will not be reversed if the record contains a "substantial basis for his probable cause findings."

838 F.2d at 162.

In the instant case, the warrant affidavit alleged that Vito Giacalone and Michael Polizzi were members of a criminal organization and were using intimidation and threats to force local restaurants to purchase produce from their newly-formed company, Farm Fresh Produce, Inc. The affidavit also detailed several specific examples of threats made against competitors and intimidation of customers. Based on these representations, Judge Taylor issued the Title III order on July 28, 1982.

In rejecting defendants' suppression motion, Judge Suhrheinrich stated that "Judge Taylor properly determined that probable cause existed." Judge Suhrheinrich noted that "[t]he affidavit clearly reflects the veracity of the informants, each of whom was known to have previously supplied accurate information leading to conviction in other cases." The court also noted that the informants' knowledge was obtained on a first-hand basis. Applying the totality of the circumstances test, the court concluded that "probable cause was properly determined to exist in this case despite innocent explanations which may exist for the defendants' actions."

In the instant case, defendants apparently concede that the informants' allegations were sufficient to establish probable cause to believe that offenses had been and would continue to be committed, namely extortion. Defendants, however, claim that the accusations contained in the affidavit did not support a finding of probable cause with respect to the statutory requirements of 18 U.S.C. § 2518(3)(b) and (d), i.e., the evidence did not show probable cause to believe that extortionate activity would be conducted over the telephone or that it would take place at defendants' business. In their brief, defendants point out that the alleged acts of extortion, as described by the informants, occurred in person rather than over the telephone, and that all of the threats were made at the victims' places of business rather than at Farm Fresh. Therefore, defendants conclude that the warrant application did not meet the statutory probable cause standard. We disagree.

Given the totality of the circumstances as set forth in the warrant affidavit, we find a substantial basis in the record to support Judge Taylor's finding of probable cause. First, we emphasize that there was clearly probable cause to believe that defendants were attempting to build up the clientele of their fledgling produce business by means of extortion. Since the alleged extortionate scheme was an intrinsic part of the operation of Farm Fresh Produce, there was a fair probability that defendants would discuss this subject at the site of their offices at Farm Fresh Produce, Inc. Moreover, it is undisputed that defendants operated four telephone lines from their offices at Farm Fresh and that they regularly made purchase and sales orders and conducted other types of business over the telephone. Given the nature of the alleged scheme, there was a substantial basis of fact from which the authorizing judge could reasonably conclude that there was a fair probability that defendants would refer to their illegal activities during the

course of their telephone conversations with their customers and others. Thus, reading the whole affidavit in a common sense manner, Judge Taylor could reasonably have found probable cause to believe that incriminating communications would be intercepted at the Farm Fresh premises, as required by 18 U.S.C. § 2518(3)(b), and that the telephones to be monitored were either being used in connection with the criminal activity or were commonly used by the suspects, as required by 18 U.S.C. § 2518(3)(d).

In light of the substantial basis for the probable cause findings and the "great deference" that is to be paid to the issuing judge's determination of probable cause, we find that the district court correctly denied defendants' motion for suppression based on lack of probable cause.

2. Necessity for Electronic Surveillance

█ In addition to the probable cause requirements contained in 18 U.S.C. § 2518(3)(a), (b), and (d), subsection (c) of section 2518(3) requires a finding by the issuing judge that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Section 2518(1)(c) requires "a full and complete statement" to this effect in the affidavit.

Defendants argue that the government did not exhaust all feasible methods of investigation prior to applying for authorization to engage in electronic surveillance. Specifically, defendants contend that the FBI should have interviewed the alleged victims of the extortionate scheme and should have attempted to convince them to wear a "wire" in order to record the threats made by the defendants. In his affidavit, however, Agent Rossi stated that this approach was considered and rejected because it would "alert the suspects to this pending investigation and would thereby cause them to alter their modus operandi thereby frustrating the investigation."

Both Judge Taylor, in granting the initial authorization, and Judge Suhrheinrich, in rejecting defendants' motion to suppress, found that the government had adequately

demonstrated the need for electronic surveillance. Judge Suhrheinrich noted that according to Agent Rossi's affidavit: (1) the informants refused to testify because of fear of reprisal; (2) attempts to infiltrate defendants' organization had been unsuccessful in the past and were thus unlikely to succeed in the future; and (3) undercover investigations would be extremely dangerous.

In *Alfano,* this court recently reiterated the standard used for assessing the adequacy of a "needs statement" in a Title III application:

> [W]iretaps are not to be used thoughtlessly or in a dragnet fashion. As our court has said, what is needed is to show that wiretaps are not " 'being routinely employed as the initial step in criminal investigations." However, the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted.

*Alfano,* 838 F.2d at 163 (citations omitted). The *Alfano* court also quoted from a previous Sixth Circuit decision wherein we summarized the extent of the required showing of necessity as follows:

> All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate.

838 F.2d at 163–64 (quoting *United States v. Lambert,* 771 F.2d 83, 91 (6th Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985)).

Applying the foregoing standards to the facts in the instant case, it is clear that the district court correctly concluded that the statement of necessity in the warrant application was sufficient to satisfy the statutory requirements of 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c).

3. Particularity

█ Defendants' next claim of error focuses on the statutory requirements em-

bodied in 18 U.S.C. § 2518(1)(b) which states:

> (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted.

Defendants contend that subsections (b)(i) and (iii) were not met by the government's application and the accompanying affidavit.

In addition, defendants argue that the order issued by Judge Taylor did not meet the requirements of 18 U.S.C. § 2518(4)(c). That section requires the inclusion of "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates" in the interception order. Defendants claim that neither the government's application nor Judge Taylor's order were sufficiently particular as to the type of communication and the particular offense involved.

Defendants contend that the government's application and the court's order were deficient in that they describe the communications to be intercepted in terms of the particular offenses which the government suspects are being, or are about to be, committed. The defendants suggest that such a method of describing the communications was not sufficiently particular because it did not limit the scope of the electronic surveillance intrusions. Instead, defendants claim that the authorization order should have specifically limited the scope of the surveillance to "extortion-related activities in the operation of their produce business in securing additional customers."

We do not find this degree of specificity necessary. Several courts have upheld Title III authorizations in which the communication to be intercepted was described in terms of the suspected offense. *See, e.g., United States v. Licavoli,* 604 F.2d 613 (9th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); *United States v. Cohen,* 530 F.2d 43 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *United States v. Tortorello,* 480 F.2d 764 (2d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed. 2d 86 (1973). As stated by the *Tortorello* court:

> These decisions demonstrate that a pragmatic approach has been taken with respect to the particularity requirement. A specific crime or a specific series of related crimes must be identified. Although the nature and type of the anticipated conversations must be described, the actual content need not and cannot be stated since the conversations have not yet taken place at the time the application is made and it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime. *United States v. Sklaroff,* 323 F.Supp. 296, 307 (S.D.Fla.1971). The order must be broad enough to allow interception of any statements concerning a specified pattern of crime. In determining whether the order and application are sufficiently particular, the papers as a whole must be considered, including especially those portions which recite facts intended to establish probable cause.

480 F.2d at 780. Defendants are apparently unable to cite any authority to the contrary. Accordingly, we find that the district court was correct in concluding that the description of the targeted communications was sufficiently specific to satisfy the requirements of 18 U.S.C. §§ 2518(1)(b) and 2518(4)(c).

4. Minimization

Finally, defendants argue that the Title III order of July 28, 1982, was executed without proper minimization. Defendants further contend that they were entitled to an evidentiary hearing on the issue, which the district court refused to grant.

In support of their argument, defendants rely on 18 U.S.C. § 2518(5) which provides that every surveillance order "shall contain a provision that [the interception] shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."

In their suppression motion filed with the district court, defendants alleged that the government did not properly limit the scope of the surveillance. The defendants, however, did not give any specific examples of conversations which should not have been monitored. Instead, defendants requested an evidentiary hearing on the issue.

In the order dated June 2, 1987, the district court found that defendants had failed to make a "sufficiently definite, specific, detailed and nonconjectural" showing of a material issue of fact so as to justify an evidentiary hearing on the minimization issue (citing *United States v. Ledesma,* 499 F.2d 36 (9th Cir.), *cert. denied sub nom. Quiroz–Santi v. United States,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974)). Nevertheless, the court reserved judgment on the issue in order to allow defendants time to submit documents "supporting his contention that insufficient minimization occurred."

On June 10, 1987, the district court issued another order in which it held that the defendants' allegations of improper surveillance were insufficient to justify a hearing on the issue of minimization. Specifically, the court found that most of the examples cited by defendants involved the use of "spot checks" by the agents monitoring the conversations. Relying on *United States v. Losing,* 539 F.2d 1174 (8th Cir.1976), the court held that such spot checks are permissible in the course of electronic surveillance. Moreover, the court found that defendants had been unable to show a *prima facie* pattern of insufficient minimization over the period of the surveillance as is required by *United States v. Lawson,* 780 F.2d 535 (6th Cir.1985). Therefore, the court denied defendants' motions for a hearing and motion to suppress.

■ On appeal, defendants do not argue that the evidence presented to the district court was sufficient to require an evidentiary hearing on the minimization issue. Instead, defendants seem to argue that they were entitled to a hearing as a matter of course because the *government* has the burden of proving that the minimization requirements were met. In their brief on appeal, defendants characterize the district court's ruling as "Kafkaesque" because all the evidence relating to the government's compliance with the minimization requirement remained in the government's possession. Defendants apparently claim that they had a right of access to all of the surveillance records and to present evidence gleaned from the records at an evidentiary hearing.

■ We find defendants' argument without merit. Defendants' argument is premised on the assumption that the government bears the burden of production and persuasion concerning its compliance with the minimization requirements. However, the law is clear in this circuit that "the burden of production and persuasion rests on the person seeking to suppress evidence." *United States v. Smith,* 783 F.2d 648, 650 (6th Cir.1986). Indeed, in *United States v. Feldman,* 606 F.2d 673 (6th Cir.1979), *cert. denied sub nom. Zalmanowski v. United States,* 445 U.S. 961, 100 S.Ct. 1648, 64 L.Ed.2d 236 (1980), this court held that the district court correctly allocated the burden when it found that the defendant did not establish a lack of minimization under a Title III order. There, the court observed that "[i]t is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." 606 F.2d at 679, *aff'g United States v. Giacalone,* 455 F.Supp. 26, 37–38 (E.D. Mich.1977). *See also United States v. Garcia,* 785 F.2d 214, 221–22 (8th Cir.), *cert. denied sub nom. Barker v. United States,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). *Cf. United States v. Cantu,* 625 F.Supp. 656, 675 n. 36 (N.D.Fla. 1985), *aff'd,* 791 F.2d 940 (11th Cir.1986). *See generally* W. Ringel, *Searches, Seizures, Arrests, and Confessions* § 20.4 (2d ed. 1987).

More fundamentally, defendants' reliance on the burden of proof to support their argument is misplaced here. Who bears the burden of production and persuasion at the evidentiary hearing is irrelevant to the separate issue of whether an evidentiary hearing should be held in the first place. And, as the district court ruled, a defendant must make at least some initial showing of contested facts to be entitled to such a hearing. Moreover, the record shows that defendants did receive much of the information they sought regarding the scope of surveillance. In fact, defendants were provided with copies of all the wiretap applications and all the wiretap authorization orders, as well as the logs and the tapes made during the course of the electronic surveillance. In addition, the district court ordered the government to provide copies of transcripts of intercepted conversations that had been prepared. Because defendants had all the information they needed to make a minimization challenge if one were warranted, the district court clearly did not abuse its discretion in denying an evidentiary hearing when defendants failed to show that minimization may not have occurred.

For the foregoing reasons, the defendants' convictions are AFFIRMED.