**Billy Swain CATE and Anna Pauline Cate, Plaintiffs,**

v.

**W. Jeff REYNOLDS, et al., Defendants.**

**No. Civ. 3–89–664.**

United States District Court, E.D. Tennessee, N.D.

July 8, 1991.

Dorothy B. Stulberg, Mostoller and Stulberg, Oak Ridge, Tenn., for plaintiffs.

Billy Swain Cate, pro. per.

William Allen, Rural Legal Services of Tennessee, Inc., Oak Ridge, Tenn., for Billy Swain Cate.

Joe R. Judkins, Wartburg, Tenn., John W. Baker, Jr., Poore, Cox, Baker, Ray & Byrne, Knoxville, Tenn., for Bobby Gibson, Sheriff.

Joel E. Pearman, Harriman, Tenn., for Armes, Coffey, Stowers, & Trail.

Charles W. Burson, Atty. Gen. & Reporter, Jimmy G. Creecy, Chief Special Counsel, Brenda Rhoton Little, Asst. Atty. Gen., Nashville, Tenn., for Reynolds, Mills, Jones & Sweat.

## MEMORANDUM AND ORDER

ROBERT P. MURRIAN, United States Magistrate Judge.

All pending motions in this case were referred to the undersigned on June 10, 1991, pursuant to Rule 72, Fed.R.Civ.P., and the Rules of this Court [Doc. 84].

Plaintiffs, Billy Swain Cate and his wife, Anna Pauline Cate, bring this civil rights action pursuant to 42 U.S.C. § 1983 challenging the administration of a prison policy regarding the strip searching of visitors to the Morgan County Regional Correctional Facility ("MCRCF"). Mrs. Cate alleges that twice in July, 1989 she was forced to undergo a visual body cavity strip search[1] in order to visit her prisoner husband despite the absence of any reason to suspect she was in possession of contraband. She alleges that she was told that if she refused the search, she would not only be denied visitation with her husband but also she would be arrested by officers of the Morgan County Sheriff's Department and subjected to a search. She also claims that her visitation rights were suspended in January, 1990 in retaliation for filing this lawsuit; that she was entitled to, but did not receive, a due process hearing in connection therewith; and that she and her husband have been subjected to a pattern of harassment by defendants. *See* Pretrial Order as Amended by Amended Complaint [Docs. 51 and __].

The plaintiffs moved to compel discovery seeking an order requiring defendants David Mills, Charlie Jones, and Steve Coffey to reveal the identities of confidential informants and the substance of the information they allegedly provided which defendants claim to have supported the authorization to conduct visual body cavity searches of Mrs. Cate on July 22 and July 23, 1989 [Doc. 76]. The defendants resist any revelation of the identities of these informants and resist providing information that would tend to compromise the confidentiality of the communications with them. They take the position that the lives of these confidential informants would be put in danger if their identities became known because the informants are all presently inmates in the care, custody, and control of the Tennessee Department of Correction. Affidavit of defendant David Mills dated June 3, 1991 [Doc. 80].

A hearing was held on this motion on June 5, 1991. For the reasons stated in a Memorandum and Order filed June 7, 1991, the motion was taken under advisement pending receipt of the affidavits of Associate Warden for Security Charlie Jones and Warden David Mills [Doc. 83].

Those affidavits were served on or about June 17, 1991, and were filed June 19, 1991 [Doc. 87].

I have reviewed these affidavits and I have reviewed plaintiffs' response (with attachments) to these affidavits [Doc. 88].

The plaintiffs contend that the Court should reject the affidavits of Messrs. Mills and Jones as a sufficient basis for establishing probable cause or reasonable suspicion or, alternatively, to conduct a further

---

1. The term "strip search" generally refers to an inspection of a naked individual without scrutinizing the subject's body cavities. The term "visual body cavity search" refers to a visual inspection of a naked individual that includes the anal and genital areas. The term "manual body cavity search" refers to an inspection of a naked individual with some degree of touching or probing the body cavities. *See Blackburn v. Snow,* 771 F.2d 556, 561 & n. 3 (1st Cir.1985).
*Daugherty v. Campbell,* 935 F.2d 780, 781 n. 1 (6th Cir., 1991).

hearing into the reliability of and credibility of the information and informants, including disclosure of the informants' identities and production of documents.

I will decline to go beyond what is before me in connection with the instant motion, *i.e.*, plaintiffs' motion for an order compelling Messrs. Mills, Jones, and Coffey to answer certain questions propounded to them during depositions and to answer certain interrogatories.

There is no basis for striking the affidavits of Messrs. Mills and Jones which were filed at the direction of the undersigned. Moreover, there is no motion for relief before the court which calls for a definitive answer regarding whether or not the searches of Mrs. Cate's person were undertaken with or without reasonable suspicion and/or probable cause. The pending motions for summary judgment filed by defendants Armes, Roberts, Coffey, Stowers and Trail do not seek resolution of the probable cause/reasonable suspicion issue [Docs. 60, 61, 62, 63, 64].

I discussed the evidentiary rule known as the informer's privilege in my Memorandum and Order filed June 7, 1991, and will not repeat that discussion here [Doc. 83]; also, *see generally* Anno., 8 ALR Fed. 6.

At his deposition taken April 30, 1991, Warden Jones said that he had received information "from a couple of different sources" that Mrs. Cate would be bringing contraband to MCRCF while visiting her husband on the weekend of July 22–23, 1989. Deposition at 29 [Doc. 88]. He was hazy about the details and said that he did not remember the extent of the information. He refused to reveal the identities of his two sources, stating that "men's lives are at stake." *Id.* at 30. Warden Mills' deposition was taken on the same day and excerpts from it are attached to plaintiffs' brief in response [Doc. 88].

Plaintiffs cite *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for the proposition that the affidavits of Messrs. Mills and Jones are not adequate

grounds to support a probable cause/reasonable finding [Doc. 88]. The *Aguilar/Spinelli* "test" is no longer applicable, however. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court changed the law of search and seizure, abandoning tests it had set forth earlier, and held that probable cause determinations, including those based upon an informant's tip, should be analyzed under the "totality of the circumstances." 462 U.S. at 238, 103 S.Ct. at 2332.

A recent decision from the United States Court of Appeals for the Sixth Circuit discusses the differences between reasonable suspicion and probable cause. The opinion concludes that "although 'reasonable suspicion is a less demanding standard than probable cause,' both require the 'totality of circumstances' inquiry...." *Williams v. Ellington*, 936 F.2d 881, 888 (6th Cir. 1991), quoting from *Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

In the context of criminal search and seizure law, a defendant must make a substantial preliminary showing that a false statement was made knowingly and intentionally, or with reckless disregard for the truth, in the affidavit supporting a search warrant in order to justify an evidentiary hearing regarding suppression of the evidence. *Franks v. Delaware*, 438 U.S. 154, 155–156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanies by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.... Allegations of negligence or innocent mistake are insufficient.... Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to

support a finding of probable cause, no hearing is required.

*Id.* at 171–72, 98 S.Ct. at 2684.

■ The alleged failure of Messrs. Jones and Mills to recall certain matters during their depositions that plaintiffs say now appear in their affidavits filed June 24, 1991, does not amount to an offer of proof pointing to specific portions of the affidavits said to be falsely made, either intentionally or with reckless disregard for the truth. *See, id.* Furthermore, the primary issue here is not the informants' credibility; rather, it is that of the affiants'. *See United States v. Giacalone*, 853 F.2d 470, 476–77 (6th Cir.), *cert. denied*, 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988). The "government affiant must reasonably believe the [informant's] allegations to be true." *Id.* "Due process does not require the disclosure of an informant's identity at a suppression hearing." *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir.1990).

In *Giacalone*, the Court upheld a district judge's decision to examine the affiant *in camera* about the veracity of matters contained in his affidavit in support of a wiretap application. 853 F.2d at 477. The Court also upheld his decision *not* to hold such an examination of the informant.

In sum, we find that the district court did not abuse its discretion by declining to examine the informants *in camera* in addition to the government's affiant. Under *Franks*, suppression is required only when the *affiant* deliberately lied or testified in reckless disregard of the truth. The procedure followed by the district court in this case struck a fair balance between defendants' interests in excluding evidence secured by means of a false affidavit and the government's interest in preserving the confidentiality of its informants. Similar procedures have been approved by other federal courts.

853 F.2d at 477 (citations omitted).

■ This is not a criminal case, but the standard is the same except to the extent that the privilege is less likely to give way in a civil case. *Holman v. Cayce*, 873 F.2d 944, 947 (6th Cir.1989). Here the informants were not witnesses to or actual participants in the conduct which gave rise to the civil cause of action, *i.e.*, the visual body cavity searches of Mrs. Cate. Memorandum and Order filed June 7, 1991, pp. 5–6 [Doc. 83]. The identities of "tipsters," as opposed to informants who actually participate in or witness the alleged unlawful conduct, need not be disclosed even in criminal cases. *United States v. Moreno*, 588 F.2d 490, 494 (5th Cir.), *cert. denied*, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 666 (1979). Whether or not defendants Mills and Jones had reasonable suspicion or probable cause to authorize the search depends on what *they* reasonably believed to be true at the time and their credibility is primarily at issue as opposed to that of the informants. *United States v. Giacalone*, 853 F.2d at 476–477.

In the context of prison disciplinary hearings, the United States Court of Appeals for the Sixth Circuit held that

[t]o accommodate the prison's informant system, the inmate's interest in full disclosure of the evidence against them and the identity of their accusers must be sacrificed.

*Hensley v. Wilson*, 850 F.2d 269, 279 (6th Cir.1988). Prison disciplinary proceedings can result in serious consequences to prisoners like loss of good time credits and the imposition of punitive segregation.

A trial court has a great deal of latitude in dealing with claims that an affidavit contains false information. *United States v. Giacalone*, 853 F.2d at 477 n. 1. In the present case the testimony of defendants Mills and Jones is unrebutted that revealing the identities of the informers would jeopardize their lives. The plaintiffs do not have to know the informants' identities in order to have a chance to prove their claims. The probable cause/reasonable suspicion issue will revolve around what defendants Mills and Jones reasonably believed to be true under the "totality of the circumstances" and not what the informants reasonably believed to be true. The plaintiffs have not alleged that defendants' averments about these informants were made up out of whole cloth. The plaintiffs

may have suspicions along that line, but that is speculation. I realize that the information sought is in the control of defendants for the most part and plaintiffs face great obstacles in obtaining it except from the defendants, but an evidentiary privilege is involved as well as a risk to life and limb if the identities are disclosed.

Plaintiffs have not met their burden of making a compelling demonstration that the identities of the informants, information likely to reveal their identities, and what they might or might not say they told defendants, are likely to influence the outcome of the case or is essential to the plaintiffs' preparation for trial. *See Holman v. Cayce*, 873 F.2d at 997. The plaintiffs' case, insofar as probable cause/reasonable suspicion is concerned, will rise or fall primarily on the credibility of the defendants themselves.

For the reasons indicated, the plaintiffs' motion to compel discovery is DENIED.

IT IS SO ORDERED.