**UNITED STATES of America, Appellee,**

v.

**Stephen R. BARONE,
Defendant-Appellant.**

**No. 680, Docket 85–1373.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1986.

Decided April 4, 1986.

Elliot R. Warren, Asst. U.S. Atty., D. Conn., Bridgeport, Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., New Haven, Conn., of counsel), for appellee.

Paul S. Sherbacow, Hartford, Conn., for defendant-appellant.

Before FEINBERG, Chief Judge, and FRIENDLY * and WINTER, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal from a judgment of conviction in the District Court for Connecticut, T. Emmet Clarie, *Judge,* for a drug offense based upon a conditional plea of guilty requires this court to consider for the first time the question reserved by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 170, 98 S.Ct. 2674, 2683, 57 L.Ed.2d 667 (1978), concerning the application of the principles there announced to a case where the Government contends that a full scale hearing would endanger the confidentiality of an informant, *see McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

The case arises as follows: On January 23, 1985, Magistrate Egan of the District Court for Connecticut issued a search warrant for Barone's apartment in Hartford on the basis of an affidavit by Special FBI Agent Richard A. Foster, Jr. The affidavit referred to a confidential informant who for some time had been providing reliable information that had been corroborated through independent investigation and had resulted in the seizure of narcotics, cash and paraphernalia and in convictions for narcotics offenses. The affidavit stated that the informant had advised Foster that Barone was a cocaine dealer; that the informant had purchased cocaine from Barone in the past; that Barone kept cocaine in his apartment, where the informant had seen it on several occasions; that the informant had called Barone, at an unlisted number shown on records of the telephone company to be subscribed to by Barone, to order cocaine; that Barone either allowed his customers to come to the apartment or delivered the cocaine in a grey Buick Regal, of which records of the Connecticut Department of Motor Vehicles showed Barone to be the owner; that Foster had visited the building where the informant alleged Barone's apartment was located and had observed Barone's name listed on the mail/register in the lobby as the occupant of the apartment in question; that Foster had recently arranged for the informant to make a controlled buy of cocaine from Barone; that Foster and other agents had watched the informant make a controlled street buy in East Hartford, with money provided by the FBI, from a white male whose height and age fit the descriptions of Barone given by the informant and appearing in the records of the Connecticut Department of Motor Vehicles and who was driving the grey Buick Regal; and that, after the buy, the seller drove to Barone's apartment. Foster concluded from the above and from a positive test of the substance delivered to the informant that Barone's apartment contained items of contraband and other evidence of violation of the federal narcotics laws.

Following a search of Barone's apartment and the seizure of approximately one ounce of cocaine found therein, Barone was indicted for knowingly and intentionally possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He

---

* This opinion is substantially in the form written by Judge Friendly before his death on March 11, 1986.

pleaded not guilty and moved to suppress the evidence seized during the search on the grounds that the warrant was insufficient on its face, that there was no probable cause for believing the existence of the grounds on which it was issued, that Foster's affidavit contained false statements that were made intentionally, knowingly, or with reckless disregard for the truth, and that Foster knew that the informant was an alcoholic and generally unreliable. A supporting affidavit of Barone alleged, *inter alia*, that the informant referred to in Foster's affidavit had made no purchases of cocaine during the time alleged in the affidavit, that the informant had never entered Barone's apartment, and that the informant had never called Barone to order cocaine during the period alleged in the affidavit. The supporting affidavit did not identify the informant.

The district court, over the Government's objection, ordered a hearing. Barone called Anthony Morris as a witness. Morris testified that on the day before issuance of the warrant he had purchased cocaine from Barone in East Hartford. He denied receiving the purchase money from the FBI, being under FBI surveillance, or turning the drugs over to FBI agents. He also denied ever having been at Barone's residence, seeing cocaine there, or telling anyone that he had done so. He admitted having bought drugs from Barone on previous occasions but denied knowing whether Barone had sold drugs to others.

Agent Foster testified in regard to a controlled buy on January 22, 1985, substantially in accordance with his affidavit, adding that some $375 in marked bills had been advanced and that some of the recorded bills had been recovered during the search of Barone's apartment. He also testified that the same person who made the controlled buy had provided the specific information attributed in his affidavit to "a confidential informant," though a second informant had provided general information that Barone was a drug dealer. The court sustained objections to questions by Barone's counsel calling for Foster to divulge the identity of the informant, but the examination was not restricted in any other way.

Barone testified that Morris was his only customer for a $350 or $375 sale on January 22, 1985. He denied that Morris had ever been to his apartment and claimed that the sale on January 22 was the only one he had made to Morris, but admitted keeping cocaine in his apartment, selling it there to some customers, and delivering it to others.

Exaggeratedly portraying the situation as one where "[i]f Morris is the informant, and Morris is to be believed, then the agent's affidavit is false, knowingly false, because he made it up," Barone's counsel asked the judge "to conduct an in camera inquiry." The judge conducted such an inquiry, attended only by himself, a court stenographer, an Assistant United States Attorney, and Agent Foster, who was examined at length with respect to his affidavit. In a subsequent ruling denying the motion to suppress, the court announced that it was "satisfied that the agent's affidavit, as submitted to the Magistrate, was truthful" and met the standards of *Giordenello v. United States*, 357 U.S. 480, 485–86, 78 S.Ct. 1245, 1249–50, 2 L.Ed.2d 1503 (1958), and *Aguilar v. Texas*, 378 U.S. 108, 114–15, 84 S.Ct. 1509, 1513–14, 12 L.Ed.2d 723 (1964).[1] Later the court made supplemental findings of fact; the pertinent ones are quoted in the margin.[2] Thereafter Bar-

---

1. In fact, the standard is now less stringent than that announced in *Aguilar*. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

2. 5. Before the "controlled buy" on January 22, 1985, the defendant was under surveillance beginning at his residence, 550 Burnside Avenue.
   6. The defendant was observed proceeding to the area of the European Suntan Center.

7. The "controlled buy" took place in the vicinity of the European Suntan Center.
   8. After the "controlled buy" was completed, the informant did not tell Foster exactly where it took place.
   9. However, other officers observed the "controlled buy."

one, reserving his right to appeal the denial of his motion to suppress, was allowed to plead guilty and was sentenced. This appeal followed.

## DISCUSSION

Barone asserts that, despite what seems to have been meticulous regard for his claim that Agent Foster's affidavit was intentionally, knowingly or recklessly false, the district court failed to follow the precepts of *Franks v. Delaware.* That case settled a conflict among the state and lower federal courts by holding that, in carefully circumscribed conditions, the Fourth Amendment requires an adversary evidentiary hearing for a defendant who challenges the veracity of statements contained in an affidavit on the basis of which a search warrant has issued. One condition is that the subject of the hearing is the veracity of the affiant, not of persons on whom he justifiably relied. 438 U.S. at 171, 98 S.Ct. at 2684. Another is that a hearing is required only if the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56, 98 S.Ct. at 2676. Finally, the Court held that "because we are faced today with only the question of the integrity of the affiant's representations as to his own activities, we need not decide, and we in no way predetermine, the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made." *Id.* at 170, 98 S.Ct. at 2683.

Assuming in Barone's favor that his moving affidavit satisfied the requirement of a "substantial preliminary showing," we do not understand why the adversarial hearing that was accorded did not satisfy the requirement of *Franks.* Morris, Agent Foster and Barone testified and were subject to cross-examination. The only restriction imposed was the court's sustaining the Government's objection to questions that would have required Foster to disclose the identity of the informant, but under *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), this would have been proper in any suppression proceeding, as distinguished from at the trial itself, *see Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We see no force in Barone's argument that the hearing could not qualify as a *Franks* hearing because it included all the grounds urged in Barone's motion to suppress: the issue of the veracity of Foster's affidavit was clearly tendered by Barone's counsel and met by the Government. The dilemma posed by Barone's counsel at the end of the hearing, which we have quoted above, was not a real one. First, if Morris was not the informant, no issue as to Foster's credibility arose. Second, even if Morris was the informant, and even if his testimony that he had never been in Barone's apartment, never seen cocaine there, and never been associated with the FBI was believed, this did not prove that he had said to Foster the

10. The informant who made the controlled buy on January 22, 1985 is the same informant referred to in paragraph 3 of Foster's affidavit.

11. Sometime in December, 1984, this informant told Foster that he had been inside the defendant's apartment.

12. The informant described the interior of the apartment to Foster.

13. The defendant admitted keeping cocaine in his apartment.

14. The defendant admitted selling cocaine to approximately ten to fifteen regular customers.

15. The defendant admitted selling cocaine in his apartment.

16. The defendant admitted using his automobile to deliver cocaine.

17. The defendant admitted packaging his cocaine in plastic bags.

18. The information provided by the credible informant and relied upon by Agent Foster was reliable and truthful.

19. When he included the information in his affidavit, Agent Foster believed it to be true.

20. At no time did Agent Foster add to or subtract from the information received from the reliable informant.

same things to which he testified at the hearing; it proved only that he was lying on one occasion or the other. Since the judge was not required to believe that Morris was telling the truth as the hearing, he would have been justified in declining to hold an *in camera* inquiry at all. Having requested such an inquiry, Barone cannot be heard to complain that it was held or use this as a justification for still a third hearing.

Finally, apart from Barone's request, an *in camera* inquiry is a proper and sensible solution in cases where, after a substantial preliminary showing and an adversarial hearing limited by the need to avoid disclosure of the identity of an informant, a district judge believes he will be aided by a further inquiry in which the limitation will not be necessary. *See, e.g., United States v. Southard,* 700 F.2d 1, 11 (1 Cir.), *cert. denied,* 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Arrington,* 618 F.2d 1119, 1125 (5 Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981). The Court in *Franks* recognized that handling cases involving the identity of a confidential informant was "difficult" and that under the facts there presented, it was not required to decide how this should be done. Nothing in *Franks* remotely suggests that when the added factor of a confidential informant is present, the procedure followed must be identical to that in a case where there is no informant. The procedure here adopted by Judge Clarie—going as far as possible in a public hearing and supplementing this with an *in camera* inquiry—seems a highly commendable method for reconciling the interests of the defendant and the Government, though we do not hold that so much is always required. *Cf. United States v. House,* 604 F.2d 1135, 1140–41 (8 Cir.1979) (district judge's examination of informant's written statement, in which informant's name was blackened out, held sufficient under *Franks* ), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). Barone himself characterizes as an enlightened approach the statement of the district judge in *United States v. Brian,* 507 F.Supp. 761, 766 (D.R.I.1981), *aff'd sub nom. United States v. Southard, supra,* that

> in a case where—because the Government's affidavit relies primarily on the use of confidential informants—defendants lack the very information that *Franks* requires for a threshold showing; where defendants deny, via affidavit, specific facts attributed to them by informants; and where defendants make some minimal showing of inconsistency on the face of the government's material which supports their assertion of deliberate falsehood or reckless disregard for the truth, the Court may, and probably should, conduct an *in camera* interview of the affiant, and, if necessary, of the informants relied upon by the Government.

Here, after the detailed *in camera* testimony of the agent, the court did not think it "necessary" to hear any other witness. We cannot fault that determination. Even on the basis of a cold record we would come to the same conclusion; the district judge had the added benefit of observing Foster. The *in camera* inquiry afforded no basis for reopening the adversarial hearing already held; to the contrary, it eliminated whatever lurking doubt, if any, the judge may have had when that hearing ended.[3]

Affirmed.

---

**3.** Barone relies on the statement in *United States v. Kiser,* 716 F.2d 1268, 1273 (9 Cir.1983), that if the trial court there should find as a result of an *in camera* inquiry that Kiser had made a "threshold substantial showing of falsehood," Kiser would be entitled to a *Franks* hearing. In the present case, the *in camera* inquiry disspelled any showing of falsehood that Barone might be deemed to have made at the adversarial hearing. Moreover, in *Kiser* there had been no adversarial hearing prior to the *in camera* inquiry; here, there was.