**UNITED STATES of America,**

v.

**Stephen Anthony BROWN and Carl Wilson, Defendants.**

**No. S 90 Cr. 115 (PKL).**

United States District Court, S.D. New York.

Aug. 22, 1990.

---

Otto G. Obermaier, U.S. Atty., Southern District of New York, New York City (Ass't U.S. Atty. Jonathan M. Halpern, of counsel), for U.S.

Michael M. Maloney, New York City, for defendant Stephen Anthony Brown.

Orden & Cohen, New York City (Joel Cohen, of counsel), for defendant Carl Wilson.

## OPINION AND ORDER

LEISURE, District Judge.

Defendants are charged in a five count superseding indictment now before this Court. Defendants Stephen Anthony Brown ("Brown") and Carl Wilson ("Wilson") are charged in Counts One through Four of the indictment with conspiracy to possess and distribute cocaine (Count One), and three counts of substantive distribution or possession with intent to distribute cocaine (Counts Two, Three, Four). Additionally, Brown is charged with illegal reentry into the United States after a previous deportation (Count Five). The defendants have now brought various pre-trial motions before the Court. Certain of those motions were addressed by the Court following oral argument on August 9, 1990.[1] Those motions not decided at the hearing are addressed below.

## DISCUSSION

*A) Severance of Parties*

Defendant Wilson has moved to be severed from defendant Brown. The Second Circuit has recently stated that Fed.R. Crim.P. 8(b) provides that "participation of multiple defendants in the 'same act or

---

1. At the August 9, 1990 hearing, the Court denied defendants' motions for a bill of particulars, for disclosure of the government's witness list, for additional discovery under Fed.R. Crim.P. 16, for pre-trial disclosure of material defined in the Jencks Act, 18 U.S.C. § 3500, for additional discovery from the government as required under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and for pre-trial disclosure of what "other act" evidence the government plans to introduce at trial pursuant to Fed.R.Evid. 404(b).

transaction,' or the same 'series' of such acts, will authorize a joint trial on common or individual counts." We have construed this language to mean that joinder is proper where two or more persons' criminal acts are " ' "unified by some substantial identity of facts or participants," or "arise out of a common plan or scheme." ' " *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990) (*quoting United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989)) (*quoting United States v. Porter*, 821 F.2d 968, 972 (4th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988)).

■ Generally, where defendants … "are jointly indicted [they] should be jointly tried." *United States v. Ventura*, 724 F.2d 305, 312 (2d Cir.1983). This is particularly true where the crimes charged involves a common scheme or plan. *See United States v. Turoff*, 853 F.2d 1037, 1042–43 (2d Cir.1988); *United States v. Girard*, 601 F.2d 69, 72 (2d Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). The Supreme Court has unequivocally stated that "[j]oint trials play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987).

■ The Court notes that motions to sever under Fed.R.Crim.P. 14 are "committed to the sound discretion of the trial judge," and that it is a defendant's "heavy burden" to:

> show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial. The defendant must demonstrate that he suffered such prejudice as a result of joinder, not that he might have had a better chance for acquittal at a separate trial.

*United States v. Chang An–Lo*, 851 F.2d 547, 556 (2d Cir.) (citations omitted), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). *See also United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987) (burden of showing substantial prejudice amounting to a miscarriage of justice). " ' "[D]iffering levels of culpability and proof are inevitable in any multiple defendant trial and, standing alone, are insufficient grounds for separate trials." ' " *United States v. Torres*, 901 F.2d 205, 230 (2d Cir.1990) (*quoting United States v. Chang An–Lo, supra*, 851 F.2d at 557 (*quoting United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2546, 2547, 77 L.Ed.2d 1335 (1983))).

■ The focus of Wilson's severance motion is the likelihood that evidence will be introduced against Brown that does not involve Wilson. Wilson asserts that this evidence will have a "spillover" effect on him, thus prejudicing his ability to receive a fair trial. However, the simple fact that evidence will be introduced against Brown that will not be applicable to Wilson is not grounds for severance, particularly where the jury will be instructed as to the proper consideration of the evidence as it applies to each defendant. *See United States v. Carson, supra*, 702 F.2d at 367; *United States v. Losada*, 674 F.2d 167, 171–72 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). More importantly, in the instant case, the face of the indictment indicates that the vast majority of the crimes charged involve joint action by the defendants. Thus, most of the evidence will be admissible against, and applicable to, both defendants. The Court finds that Wilson has not shown that a joint trial will substantially prejudice him. Thus, his motion for severance from defendant Brown is denied.

*B) Severance of Counts*

Defendant Brown moves to have Counts One and Five severed from the remainder of the indictment. Because these two Counts are related differently to Counts Two, Three and Four, the Court will deal with the severance of Counts One and Five separately.

*1) Count One*

Brown asserts that Count One does not bear a sufficient relationship to the remainder of the indictment to be properly joined. Count One alleges that Brown and Wilson

participated in a conspiracy to distribute cocaine. Count One further includes six overt acts stretching in time from August through October 1989. Brown alleges that this conspiracy count is not sufficiently related to the other alleged offenses to justify its joinder.

 In multi-defendant cases, such as the one now before the Court, the joinder of offenses must be reviewed under the standard set forth under Fed.R.Crim.P. 8(b), rather than under Fed.R.Crim.P. 8(a). *United States v. Turoff, supra*, 853 F.2d at 1043; *United States v. Biaggi*, 909 F.2d 662, 675–76 (2d Cir.1990). Thus, "multiple defendants cannot be tried together on two or more 'similar' but unrelated acts or transactions; multiple defendants may be tried together only if the charged acts are part of a 'series of acts or transactions constituting an offense or offenses.'" *Id.* (*citing* C. Wright, *Federal Practice and Procedure*, § 144, at 508–09 (2d ed. 1982)). Thus, it is clear that a conspiracy count can be joined with a substantive offense, if those offenses arise out of the same series of events or transactions.

 In the instant case, it is evident from the face of the indictment that the Count One is sufficiently related to Counts Two through Four. The Count One conspiracy includes the entire time period covered by the three substantive narcotics offenses alleged in Counts Two through Four. Where an indictment on its face charges defendants with a conspiracy to commit certain acts, and also charges commission of such acts within the time frame of the alleged conspiracy, it may logically be concluded that the substantive acts were a part of the same series of acts or transactions alleged in the conspiracy. Further, the simple fact that one of the overt acts

alleged in the conspiracy is not intimately tied to the substantive offenses charged in Counts Two through Four does not, in and of itself, indicate that the conspiracy and the substance offenses did not arise out of the same series of acts or transactions, as required by Rule 8(b). Thus, the Court finds that Count One is adequately joined under Rule 8(b). Further, the Court finds that Brown has not shown substantial prejudice as required under Fed.R.Crim.P. 14 for the Court to exercise its discretion to sever an otherwise properly joined offense.

### 2) Count Five

 Defendant Brown further asserts that Count Five of the indictment, charging him with illegal reentry into the United States, should be severed from the remainder of the indictment. The Court will review this assertion under the standard of Rule 8(b), as discussed above.[2]

The only basis for joinder of Count Five under Rule 8(b) is that it is part of the same series of acts or transactions as the other offenses charged in the indictment. Count Five on its face is substantially different from the other allegations in the indictment. The focus of the first four counts, which name both Brown and Wilson as defendants, is an alleged conspiracy to possess and distribute cocaine, and the actual possession and distribution of cocaine. By contrast, Count Five names only Brown as a defendant, and charges him with entering the United States illegally after a prior deportation, in violation of § 1326 of Title 8 of the United States Code. Brown asserts that this charge is not sufficiently related to the other counts in the indictment to withstand scrutiny under Rule 8(b).

---

2. At least one Court has recently indicated that in multi-defendant trials, the issue of joinder of offenses should be judged under Rule 8(b) where the offense at issue involves more than one of the defendants. However, where the challenged offense names only the defendant challenging its joinder, the Court found it should apply the less stringent joinder standard expressed in Rule 8(a). *United States v. Biaggi*, 705 F.Supp. 852, 854–55 (S.D.N.Y.1988). In affirming the District Court's findings, the Second Circuit refused to adopt the District Court's conclusion regarding the appropriate application of Rules 8(a) and 8(b), finding instead that the joinder accomplished in that case could be upheld in its entirety under Rule 8(b). *United States v. Biaggi, supra*, 909 F.2d at 676. This Court will thus review the joinder of both Counts One and Five under the standard required by Rule 8(b), even though Count Five names only defendant Brown.

The government argues that Brown's involvement in the substantive offenses charged in Counts Two through Four is directly related to the illegal reentry charged in Count Five, since Brown could not have accomplished those substantive offenses as charged without being present in the United States. "In the absence of his illegal return and presence in the United States[,] this post-deportation charge of narcotics trafficking in the United States would not have been brought against him." Government's Memorandum of Law at 27. Thus, the government argues, Brown's allegedly illegal reentry into the United States was a critical act leading to his commission of the substantive offenses charged in Counts Two through Four.

In asserting that this relationship between Count Five and the remainder of the indictment is sufficient for joinder under Rule 8(b), the government has directed the Court's attention to *United States v. Cole,* 857 F.2d 971 (4th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1351, 103 L.Ed.2d 819 (1989). In *Cole,* the defendants were charged with and convicted of various narcotic offenses. Additionally, defendant Cole was charged with smuggling illegal aliens into the United States. Evidence was produced at trial indicating that the aliens had, on at least one occasion, been used in furtherance of the drug offenses charged. The Fourth Circuit reviewed the joinder of the smuggling count to the narcotics offenses under the section of Rule 8(a) that is substantially similar to the standard in Rule 8(b). The Court found that the fact that some of the aliens brought into the United States by Cole went to work for the narcotics ring was sufficient evidence that the smuggling and narcotics offenses were " 'related to, and . . . logically and intimately connected together with' the drug conspiracy." *United States v. Cole, supra,* 857 F.2d at 973 (*quoting United States v. Jamar,* 561 F.2d 1103, 1006 (4th Cir.1977)).

The Court finds that the connection between the various charges currently before it is at least as close as the connection found to be sufficient in *Cole.* It would have been impossible for Brown to have committed the narcotics offenses charged without actually being present in the United States. Since it is alleged that Brown's presence in the United States was, itself, a crime, the substantive narcotics offenses and the illegal reentry count are sufficiently related for purposes of joinder under Rule 8(b). This conclusion is bolstered by the government's assertion that Brown's presence at his grocery store in Harlem after his illegal reentry indicates that Brown's reentry was directly related to his commission of the substantive narcotics offenses and to his participation in the narcotics conspiracy charged.

The finding that Count Five was properly joined under Rule 8(b) does not end the Court's inquiry. The Court must also determine whether the counts should be tried together, or whether those counts should be severed by the Court pursuant to Rule 14. Brown argues that he will be prejudiced by having Count Five tried with the other charges in the indictment because the presence of Count Five will permit the government to introduce evidence against him that would not be admissible if he were tried solely on Counts One through Four. Specifically, Brown asserts that the government must and will introduce evidence of his 1984 narcotics conviction which led to his deportation in order to prove the allegations in Count Five. Brown contends that the introduction of this prior conviction, even when tempered by a proper limiting instruction to the jury from the Court, will unduly prejudice his defense to the narcotics charges in the instant indictment.

The government has indicated to the Court that it intends to introduce evidence of Brown's prior conviction both as proof of the allegations in Count Five and as "other act" evidence in support of the narcotics offenses charged. In general, evidence of prior criminal activity is not admissible to prove character. However, under Fed.R.Evid. 404(b),[3] "[E]vidence of pri-

---

**3.** Fed.R.Evid. 404(b) states:

Other crimes, wrongs, or acts. Evidence of

other crimes, wrongs, or acts is not admissi-

or wrongs or acts may be admissible for other purposes, including proof of identity. 'If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.'" *United States v. Sappe*, 898 F.2d 878, 880 (2d Cir.1990) (*quoting Huddleston v. United States*, 485 U.S. 681, 688, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988)). "Under the 'inclusionary' or 'positive' approach to other acts evidence that controls in this Circuit, other acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity." *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989).

The government contends that Brown is likely to claim as part of his defense to the narcotics charges that he was unaware of any cocaine or cocaine trafficking at his grocery store in Harlem. The government asserts that it has evidence linking Brown to the narcotics trafficking charged, including the testimony of agents who witnessed Brown at the S.B. Grocery, which Brown allegedly operated. However, Brown was not present at the Grocery during the search which resulted in the seizure of narcotics and other drug paraphernalia. Thus, the government contends that Brown will assert a lack of knowledge that his store was being used for narcotics trafficking.

Such an assertion would place Brown's intent and knowledge in issue. Where intent or knowledge are placed in issue, introduction of "other act" evidence is often appropriate under Rule 404(b). "Rule 404(b) expressly provides that similar act evidence may be admitted for the purpose of proving knowledge. When the defendant disavows awareness that a crime was being perpetrated, and the government bears the burden of proving the defendant's knowing possession, knowledge is properly put in issue." *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir.1990).

In *United States v. Bruno*, 873 F.2d 555 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989), the defendant claimed, as the government asserts Brown will in the instant case, that he was "merely present" at the time the narcotics offenses with which he was charged were committed. The Court in *Bruno* found that a assertion of mere presence put the defendant's intent in issue, thus entitling the government to prove his intent pursuant to Rule 404(b). 873 F.2d at 561–62. *See also United States v. Colon*, 880 F.2d 650, 658 (2d Cir.1989); *United States v. Martino*, 759 F.2d 998, 1005 (2d Cir.1985) (prior conviction admissible to rebut "mere presence" and "mere association" defenses).

■ The Court is troubled by the government's reliance on the possible introduction of Brown's prior conviction in support of its case on the narcotics charges under Rule 404(b). While the Court concurs that it is likely that defendant Brown will place his knowledge or intent in issue in his defense to the narcotics charges, it cannot be said with certainty at this time that the defense will be raised. The Court notes that a defendant can defeat the introduction of other act evidence under Rule 404(b) by explicitly waiving defenses that would provide the government the opportunity to introduce the other act evidence. In order to forestall a Rule 404(b) introduction of other act evidence, the defendant must "express[ ] a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed." *United States v. Ortiz, supra*, 857 F.2d at 904 (*quoting United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir.1980)).

ble to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In the instant case, Brown has not indicated to the Court whether he intends to raise any defense which places his intent or knowledge in issue to any or all of the narcotics offenses charged. If Brown were to indicate to the Court and the government that he will not raise any defense which would place his intent or knowledge at issue, and thus allow introduction of "other act" evidence, the Court would hold that defendant will be unduly prejudiced by the introduction of his prior conviction only as to Count Five. However, absent such a formal indication, as required by *United States v. Ortiz, supra*, the Court finds that severance would not be appropriate, as the crimes charged are sufficiently related, and there is insufficient evidence of prejudice to the defendant due to the likely introduction of "other act" evidence under Rule 404(b). Thus, the Court holds that defendant's motion to sever Count Five is denied, unless defendant files a formal notification to the Court and the government by August 30, 1990 that he will not raise any defense to the narcotics charges which puts his intent or knowledge in issue during the trial of the case, by way of direct evidence, opening and closing statements, or cross-examination of witnesses.

### C) *Suppression of Physical Evidence*

Defendants have moved for suppression of physical evidence obtained during a search, pursuant to a warrant, of the S.B. Grocery Store at 406 Lenox Avenue in Manhattan, which was operated by Brown.[4] Defendants assert that the warrant which authorized the search at issue was deficient because the underlying affidavit was insufficient as a matter of law. Defendants move for suppression of the fruits of the search of the S.B. Grocery or, in the alternative, a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to determine the validity of the underlying affidavit and the warrant which was based on it.

On February 13, 1990, federal agents, acting pursuant to a search warrant, entered the S.B. Grocery and seized various items, including a plastic bag containing 150 grams of a substance the field-tested positive for cocaine, some jewelry, certain drug-related paraphernalia, some documents, and over $1000 in cash. The warrant which authorized the search was issued on February 8, 1990 by United States Magistrate Naomi Reice Buchwald, in reliance on the sworn affidavit of Special Agent Louis G. Delli–Pizzi of the United States Immigration and Naturalization Service ("INS"). Agent Delli–Pizzi, in turn, relied heavily on information obtained from a confidential informant regarding activities at the S.B. Grocery. The warrant as issued permitted the seizure of a broad category of physical evidence. All of the items seized clearly fall within one of the categories of material permitted to be seized under the warrant issued by Magistrate Buchwald. Defendants claim that the warrant issued by Magistrate Buchwald, and, thus, the search, were not supported by probable cause. Defendants assert that the warrant relied too heavily on a confidential informant, and contained numerous misstatements of fact.

In reviewing a search warrant issued by a Magistrate, the Second Circuit has stated that " '[o]nce a magistrate has made a determination on the issue of probable cause,' a reviewing court's 'after-the-fact examination of the papers is not to be *de novo* review.' *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983). We had also held that in close cases doubt should be resolved in favor of upholding the warrant. *United States v. Zucco*, 694 F.2d 44, 46 (2d Cir.1982)." *United States v. Cruz*, 785 F.2d 399, 405 (2d Cir.1986).

In determining whether there was probable cause for issuing a warrant where the supporting information comes in whole or in part from an informant, the Court must apply the "totality of the circumstances" standard delineated by the Su-

---

**4.** This motion was brought by defendant Brown, and was joined in by defendant Wilson without additional legal or factual argument.

preme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "While 'an informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his report,' the totality-of-the-circumstances analysis 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.' " *United States v. Feliz–Cordero,* 859 F.2d 250, 253 (2d Cir. 1988) (*quoting Gates, supra,* 462 U.S. at 230, 234, 103 S.Ct. at 2328, 2330). " 'In dealing with probable cause, ... as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Gates, supra,* at 231, 103 S.Ct. at 2328 (*quoting Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)).

■ "Affidavits in support of an application for a search warrant should be read as a whole and constructed in a realistic, common sense manner so that their purpose is not frustrated." *United States v. Gambino,* 734 F.Supp. 1084, 1098 (S.D.N.Y. 1990) (*citing United States v. Harris,* 403 U.S. 573, 577–79, 91 S.Ct. 2075, 2078–79, 29 L.Ed.2d 723 (1971); *see United States v. Young,* 745 F.2d 733, 758 (2d Cir.1984), *cert. denied sub nom. Myers v. United States,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). Affidavits should not be read "with the same microscopic intensity as municipal bond counsel would read a bond indenture." *United States v. Pond,* 523 F.2d 210, 214 (2d Cir.1975), *cert. denied,* 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976). Even if portions of an affidavit are 'tainted' by their reliance on suspect evidence, the Court should put aside that information and determine the existence of probable cause based on the untainted evidence contained in the affidavit. *United States v. Whitehorn,* 829 F.2d 1225, 1231 (2d Cir.1987), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988) (*citing United States v. Lace,* 669 F.2d 46, 49 (2d Cir.), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982));

*United States v. Gambino, supra,* 734 F.Supp. at 1099.

■ The Court has reviewed the affidavit of Agent Delli–Pizzi submitted in support of the request for a search warrant. Giving deference to the Magistrate's finding of probable cause, as the Court must, *United States v. Cruz, supra,* the Court finds that the warrant contains sufficient support for the Magistrate's finding that the requested warrant should issue. Defendants assert that the warrant should be found deficient because Agent Delli–Pizzi relied almost exclusively in his affidavit on information received from a single confidential informant.

First, Fed.R.Crim.P. 41(c)(1) provides that the evidence presented to the reviewing magistrate through affidavits "may be based upon hearsay evidence in whole or in part." Thus, the fact that much of the information contained in Agent Delli–Pizzi's affidavit was not based on his first hand knowledge is not, in and of itself, material to the viability of that affidavit and the warrant. Furthermore, it is clear from *Gates* that reliance on a confidential informant is permissible in an affidavit submitted in support of a request for a search warrant. *Gates, supra,* 462 U.S. at 241–42, 103 S.Ct. at 2333–34 (*quoting Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). The only questions for the Court are whether the Agent's reliance on that informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance of the search warrant.

Agent Delli–Pizzi in his affidavit indicated that the confidential informant on which he relied had in the past "provided highly reliable information" leading to successful criminal investigations and prosecutions. Affidavit of Louis G. Delli–Pizzi, sworn to on February 8, 1990 ("Delli–Pizzi Aff."), ¶ 5. Agent Delli–Pizzi also indicated that the informant had been providing information on defendant Brown to law enforcement officials for more than a month. Additionally, Agent Delli–Pizzi

stated that the informant had personal knowledge that narcotics were regularly stored at the S.B. Grocery, that the informant had observed firearms in that location, and that the informant had recently seen narcotics on the premises. Agent Delli–Pizzi supplemented the informant's statement with background information on Brown indicating a history of criminal activity, *Id.*, ¶¶ 10–11, and informed the Magistrate that, based on his training and experience in two years as an INS special agent, he knew that it was likely that narcotics and paraphernalia associated with the narcotics trade would be found at this location. *Id.*, ¶ 13–14.

The Court finds that the Magistrate could have properly found probable cause to issue the search warrant based on Agent Delli–Pizzi's affidavit. Agent Delli–Pizzi stated the basis for his reliance on the informant and the basis for his belief in the veracity of the informant's information. The clear implication from the affidavit is that the informant had had a long relationship with law enforcement officials which had proven very reliable in the past. This information alone goes a long way to satisfying the totality of the circumstances test outlined in *Gates.* Further, the Agent provided the Magistrate with important information on Brown's criminal history which further bolsters and corroborates the informant's statements. Finally, Agent Delli–Pizzi states that his experience indicated to him that the circumstances present at the S.B. Grocery indicated a likelihood of criminal narcotics trafficking at that location. The Second Circuit has long held that a magistrate is entitled to credit the expert opinion of an agent with experience in the area of criminal activity about which he is testifying. *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985); *United States v. Young, supra*, 745 F.2d at 758. Thus, applying the totality of the circumstances test, the Court upholds that the Magistrate's finding that probable cause existed to issue a search warrant directed at S.B. Grocery.[5]

■ The Court further finds that a *Franks* hearing is unnecessary in the instant action. A defendant seeking to have the Court hold a *Franks* hearing bears a substantial burden. *"Franks* provides that if a criminal defendant makes a substantial preliminary showing that a false statement was knowingly, intentionally or recklessly made in order to obtain a search warrant *and* if the false statement was necessary to establish probable cause, the defendant is entitled to an evidentiary hearing to determine if the warrant was obtained improperly." *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 100 (2d Cir.1990). "[A] hearing is required only if the defendant 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Barone*, 787 F.2d 811, 814 (2d Cir.1986) (Friendly, J.) (*quoting Franks, supra*, 438 U.S. at 155–56, 98 S.Ct. at 2676). *"Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true.'" *United States v. Campino*, 890 F.2d 588, 592 (2d

---

5. Additionally, the Court finds that the warrant as issued was not overly broad. While general warrants which might lead to an unrestricted search are prohibited, *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927), *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), a warrant need not delineate with particularity each item to be sought and seized and the exact probable location of that item. *Andresen v. Maryland,* 427 U.S. 463, 479, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). The warrant in the instant case is similar to one upheld by the Second Circuit as valid in *United States v.*

*Young, supra.* Only where the warrant provides the executing officers with little restriction has the warrant been found impermissibly vague. *See United States v. Buck,* 813 F.2d 588 (2d Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987) (warrant only described crimes and gave no limitation on the kind of evidence to be sought). The instant warrant provided substantial guidance to the executive officers, directing them to look for and seize only those items which could reasonably said to be associated with the alleged narcotics trafficking.

Cir.1989) (*quoting Franks, supra*, 438 U.S. at 165, 98 S.Ct. at 2681), *cert. denied sub nom. Ruiz v. United States*, —— U.S. ——, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990).

■ Brown has not made the requisite showing to justify a *Franks* hearing. Brown, through the affidavit of his attorney, has asserted that the warrant was insufficient in large part because it relies on Agent Delli–Pizzi's affidavit whose information was gathered almost exclusively from an informant. While Brown's attorney attacks the agent's reliance on the confidential informant and other alleged investigatory failures, he challenges only one paragraph of Agent Delli–Pizzi's sixteen paragraph affidavit as incorrect. Brown's attorney contends that Agent Delli–Pizzi's assertion in paragraph 12 of his affidavit, that there was a pattern of narcotics trafficking within and near the Grocery, was untrue. Affidavit of Michael M. Maloney, Esq., sworn to on July 24, 1990 ("Maloney Aff."), ¶ 10. The remainder of defendant's attack on the agent's affidavit attacks the veracity of the confidential informant and the agent's reliance on that informant, but fails to make the type of specific factual objections to the affidavit required by *Franks*. Further, even accepting Brown's assertion that the content of paragraph 12 of the agent's affidavit is false, there is still more than sufficient information in that affidavit to support a finding of probable cause for the warrant. A motion for a *Franks* hearing "must be denied ... if, after setting aside the alleged misleading statements or omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir.1987) (*quoting United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985)).

### D) Suppression of Statements

Defendant Brown moves for suppression of certain post-arrest statements. Brown, in an affidavit attached to his moving papers, asserts that at the time of his arrest he requested an attorney. Brown contends that, despite this request, law enforcement officers continued to question him. During that questioning, Brown allegedly made incriminating statements that he now moves to have suppressed.

"Once in the custody of law enforcement officials, an accused must be informed of his constitutional rights to remain silent and to counsel, and a waiver of those rights, to be effective, must be voluntarily, knowingly and intelligently made." *Campaneria v. Reid*, 891 F.2d 1014, 1021 (2d Cir.1989) (*citing Colorado v. Spring*, 479 U.S. 564, 572–73, 107 S.Ct. 851, 856–57, 93 L.Ed.2d 954 (1987); *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). "In [*Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)], the Supreme Court held that a preindictment suspect who asserts his Fifth Amendment right to counsel during interrogation may not be questioned again outside the presence of counsel unless he initiates the meeting." *United States v. Roberts*, 869 F.2d 70, 73 (2d Cir. 1989).

In the instant case, an arrest warrant for Brown was executed on February 13, 1990. Brown was found and placed under arrest near an exit on the New Jersey Turnpike. The government contends that at the time of his arrest, Brown was advised of his constitutional rights, as required by *Miranda*, failed to invoke his right to silence or for the presence of counsel, and subsequently made a potentially incriminating statement to certain of the arresting officers.[6] Brown also apparently provided the arresting agents with certain background information which, while it is not clear from his motion papers, the Court assumes Brown also moves to have suppressed.

■ Regardless of whether Brown invoked his right to counsel prior to any

---

**6.** The government asserts that Brown, while being transported from the arrest location to a government facility for processing stated to one of the arresting agents, "A girl gave me up. I know it must have been a girl. I have to be more careful with girls." *See* Affidavit of Jonathan N. Halpern, Esq., sworn to on August 8, 1990, ¶ 7(d).

custodial questioning, it is without doubt that any background information, including his name, address, nicknames, birthdate, and other information essential to his processing as an arrestee, is not protected by the constitutional requirements of *Miranda* and *Edwards*. "[T]he solicitation of information concerning a person's identity and background does not amount to custodial interrogation prohibited by *Miranda v. Arizona....*" *United States v. Adegbite*, 846 F.2d 834, 838 (2d Cir.1988); *see United States v. Gotchis*, 803 F.2d 74, 78–79 (2d Cir.1986); *United States ex rel. Hines v. La Vallee*, 521 F.2d 1109, 1112–13 (2d Cir. 1975), *cert. denied sub nom. Hines v. Bombard*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976). In *United States v. Carmona*, 873 F.2d 569 (2d Cir.1989), the Second Circuit explicitly extended the rule expressed in *Adegbite* to situations where a defendant invoked his right to counsel, and was nonetheless subjected to pedigree questions. The Court found that *Edwards* was not intended to prevent question which sought only "pedigree information or basic identifying data," but instead only provided protection to defendants who had invoked their sixth amendment rights to counsel from a full custodial interrogation. 873 F.2d at 573. Thus, to the extent that Brown seeks to suppress background, or pedigree, statements made by him to law enforcement officials after his alleged invocation of his sixth amendment right to counsel, Brown's motion must be denied.[7]

The Court inquiry does not end here. Brown contends that the arresting officers continued to question him after his assertion of his sixth amendment rights about matters other than his background and identification. This is a serious claim. *Edwards* clearly states that when a suspect or defendant invokes his or her right to counsel, any ongoing interrogation about the substance of the alleged criminal events must cease, and no interrogation cane resume outside the presence of an attorney for the suspect, unless that questioning is voluntarily initiated by the suspect. If, in fact, law enforcement officials continued to question Brown about the substance of his alleged criminal activity after an invocation of sixth amendment rights, the Court must, under the law, suppress any statements made by Brown after he invoked his rights.

The Court is faced with an apparently unsworn affidavit from Brown alleging an invocation of his right to counsel prior to questioning, and an affidavit from government counsel asserting that Brown's potentially incriminating statements were made voluntarily, free from any physical or mental coercion. Where the Court is faced with such inconclusive and conflicting evidence, an evidentiary hearing is appropriate. Thus, the Court will hear evidence from the parties at a previously scheduled hearing in this matter, scheduled for August 23, 1990 at 9:30 a.m. The Court reserves final decision on Brown's motion to suppress his non-pedigree post-arrest statements until after that evidentiary hearing.

## CONCLUSION

Defendant Wilson's severance motion is denied.

Defendant Brown's motion for the severance of Counts One from the remainder of the indictment is denied.

Defendant Brown's motion for the severance of Count Five is denied, unless Brown provides the appropriate notification to the Court and the government that he will not raise any defense that places his intent or knowledge in issue. Such a notification must be filed by August 30, 1990 in order for the Court to reconsider its decision to deny defendant's motion.

Defendants' motion to suppress physical evidence seized from the S.B. Grocery on February 13, 1990 is denied.

---

7. The Court also notes that, as it has found that the search of the S.B. Grocery was authorized by a properly issued warrant, defendant's argument that his statements to law enforcement officials following his arrest were the fruit of an illegal search is without merit. Further, the Court notes that Brown was arrested on February 13, 1990 for illegal reentry into the United States, not for a narcotics offense.

Defendant Brown's motion to suppress any pedigree information given to law enforcement officials is denied.

The Court reserves decision on defendant Brown's motion to suppress potentially incriminating, non-pedigree statements allegedly obtained in violation of *Miranda v. Arizona* and *Edwards v. Arizona*. An evidentiary hearing will be held on August 23, 1990 at 9:30 a.m. on this issue. The Court's decision will be rendered following this hearing.

SO ORDERED.